UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRADLEY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01240-SEB-DML |
| | ) | |
| LAWLER MANUFACTURING CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This cause is before the Court on the Motion for Partial Summary Judgment [Dkt. 135] filed by Plaintiff and Counter Defendant Bradley Corporation ("Bradley"). Bradley filed this declaratory judgment action seeking clarification regarding certain rights and obligations relating to a settlement and license agreement between Bradley and Defendant and Counter Claimant Lawler Manufacturing Co., Inc. ("Lawler"). Lawler's counterclaim alleges that Bradley breached this same agreement in various ways, including by "designing around" Lawler's intellectual property. Lawler has also pled a *quantum meruit* claim in the alternative.

The parties filed a previous round of partial summary judgment motions, which the Court addressed in a November 30, 2020 Order. As is relevant here, in our November 30 Order, we granted Bradley's partial motion for summary judgment on its *per se* patent misuse affirmative defense, the effect of which is that Bradley's royalty obligation under the parties' agreement ended February 26, 2019, the date on which the last Lawler patent practiced by Bradley's products expired.

1

Bradley has now moved for partial summary judgment regarding aspects of two of Lawler's counterclaims, to wit, Lawler's breach of contract counterclaim based on alleged "designing around" by Bradley and Lawler's *quantum meruit* counterclaim. More specifically, Bradley seeks a ruling (1) that Lawler's potential damages for its "designing around" counterclaim are limited to those products that actually underwent the design changes that Lawler alleges in its counterclaim constitute a "design around"; and (2) that *quantum meruit* is available, if at all, for only those activities that occurred after February 26, 2019, when the last patent encompassed by Bradley's products expired. In response, Lawler requests that the Court *sua sponte* grant summary judgment in its favor on its "designing around" counterclaim and argues that its *quantum meruit* counterclaim is not date limited.

For the reasons detailed below, we <u>GRANT</u> Bradley's Partial Motion for Summary Judgment and decline to *sua sponte* grant partial summary judgment in Lawler's favor on its "designing around" counterclaim.

## **Factual Background**[1]

Bradley and Lawler are competitors in the commercial washroom and emergency safety industry, specifically competing in the thermostatic mixing valve ("TMV")[2] and emergency safety shower and eyewash markets. In March 2001, following several years

---

[1] We have drawn heavily from the factual recitation set forth in our order addressing the parties' cross-motions for partial summary judgment and have amended those facts only to the extent relevant to address the issues now before us.

[2] TMVs are used in safety showers and eyewashes to "maintain the tempering of the water regardless of extreme fluctuations in the supply of hot or cold water to the thermostatic mixing valve." Exh. N, Col. 1, lines 64–67.

of litigation, Bradley and Lawler entered into a Settlement Agreement to resolve a lawsuit involving allegations of patent and trade dress/trademark infringement as well as various state law claims. The Settlement Agreement contained several subparts, including confidentiality agreements, a patent and trade secret license agreement ("the License Agreement"), and consent decrees. This litigation arises out of the License Agreement, specifically, the parties' dispute regarding the interpretation and application of the royalty provisions.

    Under the terms of the License Agreement, Bradley received a license to make, use, and sell the "Licensed Product," to wit, TMVs covered by "Lawler Patent Rights" or that "utilize[ed] any Lawler Trade Secrets." Dkt. 1-1 §§ 1.4, 2. "Lawler Patent Rights" are defined in the License Agreement as "patent rights arising out of or resulting from U.S. Patent Nos. 5,323,960 ["the '960 patent"] and 5,647,531 ["the '531 patent"], U.S. Patent Application No. 09/165,880 ["the '880 application"], filed on October 2, 1988, and all continuations, divisions, continuations-in-part, resulting patents, reissues, reexaminations, foreign counterparts, patents of addition, and extensions thereof." Dkt. 1-1 § 1.2. In addition to the patent rights arising out of or resulting from the '960 and '531 patents, this definition also encompassed patent rights arising out of or resulting from the following additional patents issued from continuation and divisional applications claiming priority to the '880 application: U.S. Patent Nos. 6,315,210; 6,543,478; 6,851,440; 7,191,954; 8,579,206; 9,218,006; D494,252; and D762,818 (collectively, "Kline-1 Patents"). As defined by the License Agreement, "Lawler Trade Secrets" are "the trade secrets and confidential information of Lawler … regarding the

3

design, performance, testing, assembly, pricing, and marketing of [TMVs] to which Kevin B. Kline had access during his employment … [by] Lawler between 1988 and 1997." *Id.* § 1.3.

Mr. Kline was a Lawler employee until 1997, when he joined Bradley. As part of the Settlement Agreement, Mr. Kline signed a confidentiality agreement that covered confidential information he had obtained or created during his employment with Lawler, including information disclosed in Addendum A attached to the agreement. Addendum A was thereafter filed as part of a U.S. Provisional Patent Application No. 60/314,803 ("the '803 application"), filed August 24, 2001. The following patents issued from continuation and/or divisional patent applications claiming priority to the '803 application: U.S. Patent Nos. 7,717,351; 8,123,140; 8,544,760; 9,081,392; 9,625,920; and 10,216,203 (collectively, "Kline-2 Patents"). Bradley has marked TMVs with patent numbers from patents covered by the Lawler Patent Rights, including patents from the Kline-1 and Kline-2 families.

As consideration for the licenses granted in section 2 of the License Agreement, Bradley agreed to pay Lawler royalties on certain products sold by Bradley. Specifically, the royalty section of the License Agreement applies a 10% royalty on the "Selling Price" of "Licensed Units" or "Repair Parts." *Id.* § 3.1. "Licensed Units" are defined as "each unit of Licensed Product covered by one or more claims of the Lawler Patent Rights made by or for Bradley or an Affiliate as finished product in a [TMV]." *Id.* § 1.5. "Repair Parts" are defined as "all parts and kits used to replace or repair parts of [TMVs] ….," (*id.* § 1.8), which are not, themselves, complete TMVs. The term of the License

Agreement extends until the expiration "of the last to expire of the Lawler Patent Rights," unless terminated earlier for default. *Id.* §§ 6.1–6.2.

The last utility patent coming within the Lawler Patent Rights was U.S. Patent No. 8,579,206 ("the '206 patent"), which expired on February 26, 2019. Compl. ¶ 20. The only remaining unexpired patent after February 26, 2019 that is encompassed within the Lawler Patent Rights is Lawler's U.S. Design Patent No. D762,818 ("the '818 patent"), which was filed in 2015 and will expire on August 2, 2031. *Id.* ¶¶ 21–22; Dkt. 1-4. The '818 patent covers a TMV body design embodied in various Bradley TMVs that were released to the market as early as 1998, including TMV model numbers S19-2100 and S19-2200. Pfund Decl. ¶¶ 22–23, Exh. 15–17.



Although filed fourteen years after the effective date of the License Agreement, the '818 patent falls within the Agreement's definition of "Lawler Patent Rights" because Lawler claimed priority for the subject matter of its design patent application via a series of eight continuation and divisional applications reaching back to the '880 utility patent application filed seventeen years earlier in October 1998. Unlike utility patents that generally expire 20 years from the filing date of the earliest application on which the

patentee can claim priority, a design patent such as the '818 patent expires fifteen years from the issue date, regardless of its priority date. Thus, according to Lawler, the issuance of the '818 patent extended the term of the License Agreement by twelve years (from February 2019, when the '206 patent expired, to 2031, when the '818 patent expires).

In 2018, Bradley introduced a new valve body style on certain of its TMVs, including model numbers S19-2100, S19-2150, S19-2200, S59-3080, S59-2045, S59-2080, and S59-3045. *Id.* ¶ 30. Bradley has not made or sold any TMVs having the pre-2018 valve body style after February 26, 2019, and the '818 patent does not cover Bradley's current TMVs. *Id.* ¶ 31; Compl. ¶¶ 40–41. Lawler concedes that "[a]fter the design change, … [Bradley's current] valves are no longer covered by the '818 Patent due to Bradley's design around and should not be marked with the '818 patent number." Rieger Decl., Exh. 1 at 19. Thus, since February 26, 2019, Bradley has not sold any TMV products that are covered by any unexpired claim of the "Lawler Patent Rights."

Both parties previously sought summary judgment regarding whether the License Agreement's royalty provisions could be enforced after February 26, 2019, the expiration of the last patent actually practiced by Bradley, or whether such enforcement would constitute *per se* patent misuse under *Brulotte v. Thys Co.*, 379 U.S. 29 (1964) and its progeny. Lawler argued that Bradley's royalty obligations under the License Agreement should extend through to the expiration date of the '818 patent in 2031, while Bradley argued that, under *Brulotte*, the License Agreement's royalty provisions could not be enforced beyond February 26, 2019, the expiration date of the last patent actually

6

practiced in its products.  In our November 30, 2020 Order on Cross-Motions for Partial Summary Judgment, we granted summary judgment in favor of Bradley on this issue.

In accordance with the deadline agreed to by the parties for the filing of a second round of summary judgment motions, Bradley filed the instant Motion for Partial Summary Judgment on August 27, 2020, seeking a ruling in its favor on aspects of Lawler's "design around" and *quantum meruit* counterclaims.  Lawler opposes Bradley's motion.

## **Legal Analysis**

### I. **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### II. **Discussion**

As discussed above, Bradley's partial motion for summary judgment concerns, first, Lawler's counterclaim that Bradley "designed around" its royalty obligations in

breach of the License Agreement, and second, Lawler's *quantum meruit* counterclaim. We address these arguments in turn below.

### A. Designing Around

Lawler's Counterclaim Count I § B alleges that Bradley "redesigned several of its valve bodies' outer design appearance after issuance of the '818 Patent" and that this change resulted in the TMVs no longer being covered by the Lawler Patent Rights, in breach of the License Agreement. Dkt. 30, Counterclaims at ¶¶ 27-40. In the instant motion for partial summary judgment, Bradley seeks a ruling that, because Lawler's breach of contract allegations are limited to discrete design changes made to the body shapes of specific Bradley TMVs, Lawler cannot seek damages for any alleged "design around" that is not related to one of the valves that underwent the specific valve body design changes identified in Lawler's counterclaim. In support of its motion, Bradley emphasizes the fact that no other design changes or alleged "design arounds" are referenced in Lawler's counterclaim, and, when explicitly asked in discovery to "[i]dentify all facts that support or negate Lawler's assertion that Bradley's [TMVs] resulted from a [d]esign [a]round," Lawler listed only the changes made to Bradley's valve bodies. Exh A to Rieger Decl. at 5–17.

Lawler puts forth no argument in opposition to the narrow grounds on which Bradley seeks summary judgment. Accordingly, we understand Lawler to concede that the scope of its "design around" breach of contract counterclaim is restricted to the body design changes outlined in Bradley's motion. This does not end our discussion of the "design around" counterclaim, however, because, in its response to Bradley's motion,

8

Lawler put forth a request that the court *sua sponte* grant summary judgment in its favor on the merits of that counterclaim. Bradley objects to Lawler's request on both procedural and substantive grounds.

It is undisputed that we may, in our discretion, grant summary judgment *sua sponte* on any claim, provided that the parties are first afforded proper notice and an opportunity to be fully heard on the issue. However, the Seventh Circuit has cautioned that, while "[g]ranting summary judgment sua sponte is permissible, … it is a hazardous procedure which warrants special caution." *Osler Inst., Inc. v. Forde*, 333 F.3d 832, 836 (7th Cir. 2003) (citation omitted). The Seventh Circuit has "repeatedly explained that it is appropriate to grant summary judgment *sua sponte* only when it is clear that neither side will be disadvantaged or unfairly surprised by the move." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 650 (7th Cir. 2003) (collecting cases).

Here, the parties' Case Management Plan explicitly provided for two rounds of summary judgment motions, with the parties agreeing to an August 27, 2020 deadline for the second round of motions. Bradley filed its motion in accordance with that deadline, but Lawler chose not to file a second motion for summary judgment. Apparently having had second thoughts about that decision, Lawler now asks the court to *sua sponte* grant summary judgment in its favor, without affording Bradley the benefit of sufficient notice to allow an opportunity to fully brief the issue.

It is true that, "[g]enerally, a movant is not procedurally prejudiced when summary judgment is granted against him or her on the very issues on which summary judgment

9

was sought." *Hines v. Marion Cty. Election Bd.*, 166 F.R.D. 402, 407 (S.D. Ind. 1995) (citation omitted). Here, however, the issues on which the parties have sought summary judgment do not mirror each other; in fact, Lawler's request is much broader than Bradley's. Moreover, Lawler's request does not appear to be based on any new fact or theory raised for the first time in Bradley's motion; therefore, we are unaware of any reason Lawler could not have moved for summary judgment in accordance with the schedule set forth in the Case Management Plan. In these circumstances, if we were to rule *sua sponte* on an issue not previously raised in Bradley's motion, Bradley would be procedurally disadvantaged by having had only its reply, which is subject under the Local Rules to a lesser page limit than a response, to respond to Lawler's arguments. Accordingly, we decline to *sua sponte* grant summary judgment in Lawler's favor on its "designing around" counterclaim. Summary judgment is thus entered in favor of Bradley limiting Lawler's counterclaim Count I § B to discrete changes made to the body shapes of specific Bradley TMVs as framed in its "design around" counterclaim.

### B. Quantum Meruit

Bradley has moved for summary judgment with respect to Lawler's *quantum meruit* counterclaim insofar as Lawler seeks damages from any alleged injury arising prior to February 26, 2019, the date on which the last patent practiced in Bradley's products expired. As discussed above, both parties previously sought summary judgment regarding whether the License Agreement's royalty provisions could be enforced after the expiration of the last patent actually practiced by Bradley or whether such enforcement would constitute *per se* patent misuse under *Brulotte* and its progeny. In our November

30, 2020 Order on Cross-Motions for Partial Summary Judgment, we granted summary judgment in favor of Bradley on this issue, holding that the License Agreement's royalty provisions could not be enforced after February 26, 2019.

In support of the instant motion, Bradley argues that its successful patent misuse defense renders the parties' contract unenforceable only to the extent that it requires ongoing royalties after February 26, 2019. Thus, Bradley argues that a valid contract governed the parties' relationship up to February 26, 2019, rendering any *quantum meruit* recovery unavailable before that date. Lawler rejoins that, in *Schreiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014 (7th Cir. 2002), the Seventh Circuit indicated that a contract voided on grounds of illegality, such as patent misuse, is generally treated as rescinded and requires that the parties be "put back" to their positions as if there had been no contract, evaluating value "before" the contract was rescinded. Therefore, Lawler argues, a summary judgment ruling barring *quantum meruit* recovery prior to February 26, 2019 is not warranted.

It is well-established that, because the theory of *quantum meruit* is based upon an implied contract, a plaintiff cannot recover on a theory of quasi-contract when an actual contract governs the subject matter of the dispute. *See Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) ("When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law.") (citations omitted). The case law is likewise clear that "*Brulotte* does not render an entire contract void and unenforceable merely because it includes an invalid licensing agreement. Rather, *Brulotte* renders unenforceable only that portion of a license agreement that

11

demands royalty payments beyond the expiration of the patent for which royalties are paid. … There is thus no support for the notion that *Brulotte* erects a general barrier to the enforcement of otherwise valid contract terms unless and until that last applicable patent expires." *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1023 (9th Cir. 2007) (collecting cases). Accordingly, we hold that the parties' relationship here was governed until February 26, 2019 by the terms of a valid and enforceable contract.

In response, Lawler cites the Seventh Circuit's decision in *Schreiber*, where the court suggested "that a patent holder might be able to recover under a quantum meruit theory if the amount of royalties paid was lower than the fair market value of the defendant's use of the license given that illegal contracts are treated as rescinded, placing the parties back in the positions that would have occupied had the contract never been made in the first place." *Kimble v. Marvel Enterprises, Inc.*, 727 F.3d 856, 867 n.8 (9th Cir. 2013), *aff'd*, 576 U.S. 446 (2015).  However, in *Schreiber*, the Seventh Circuit, applying *Brulotte*, held that the contract at issue was unenforceable only to the extent that the "patentee extends the patent beyond the term fixed in the [U.S.] patent statute," 293 F.3d at 1017, resulting in a "*partial* recission of the license agreement." *Id*. at 1021 (emphasis added).  Thus, while the *Schreiber* court later in the opinion referred to the contract as being "voided on grounds of illegality," *id.* at 1022, and "unenforceable," *id.* at 1023, "the context provided by the [court's] previous lengthy discussion, as well as the limited relief sought, makes clear that this is true only of the portion of the contract 'seeking to "extend" [the] patent,' *id.* at 1021, and not anything else." *Zila, Inc.*, 502 F.3d at 1023.

12

Because the subject matter at issue in this lawsuit was governed by a valid contract until February 26, 2019, *quantum meruit* recovery is not available prior to that date and Bradley is entitled to summary judgment on that issue.[3] This does not mean, however, that Lawler is prohibited from pursuing its *quantum meruit* claim altogether. *Brulotte and Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015), "expressly acknowledge that rights to royalties for 'closely related' forms of intellectual property other than a patent may survive beyond the expiration of the patent." *De Simone v. VSL Pharm., Inc.*, 395 F. Supp. 3d 617, 635 (D.Md. 2019) (citing *St. Regis Paper Co. v. Royal Indus.*, 552 F.2d 309, 315 (9th Cir. 1977) (holding that a license provision which did not distinguish between patent rights and know-how rights was unenforceable but finding that the licensor was nevertheless "entitled to compensation for its know-how"); *Pitney-Bowes, Inc. v. Mestre*, 517 F. Supp. 52, 65 (S.D. Fla. 1981) (holding in a case involving hybrid patent and trade secret licenses that, after expiration of the patent, there remained "material factual questions" as to whether the licensee's continued use of the trade secret without royalty payments would cause it to be unjustly enriched)). Thus, Lawler is not prohibited from pursuing damages with respect to allegations that Bradley will be

---

[3] We are not persuaded by Lawler's argument that the "blue pencil doctrine" is applicable here as the License Agreement is not a noncompetition agreement or other restrictive covenant. *See Heraeus Medical, LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 153 (Ind. 2019) ("When presented with unreasonable restrictions within a noncompetition agreement, Indiana courts apply the 'blue pencil doctrine.' … [T]he blue pencil doctrine applies to all restrictive covenants within noncompetition agreements, not just prohibitions against working for a competitor."); *see also Product Action Int'l, Inc. v. Marco*, 277 F. Supp. 2d 919, 924 (S.D. Ind. 2003) ("In Indiana, the blue pencil doctrine applies to a covenant not to compete that is severable in its terms.").

13

unjustly enriched by the continued benefit of Lawler's trade secrets and confidential information without royalty payments.

## III.  Conclusion

For the reasons detailed above, we <u>GRANT</u> Bradley's Motion for Partial Summary Judgment [Dkt. 135] and decline Lawler's request to *sua sponte* issue summary judgment in its favor on Count I, § B of its counterclaim.

IT IS SO ORDERED.

Date:  _____5/25/2021_____         _____
                                                                           SARAH EVANS BARKER, JUDGE
                                                                           United States District Court
                                                                           Southern District of Indiana

Distribution:

Jeffrey N. Costakos
FOLEY & LARDNER LLP
jcostakos@foley.com

Stephen E. Ferrucci
CLAPP FERRUCCI
SFerrucci@SeanMClapp.com

Kathleen I. Hart
RILEY BENNETT EGLOFF LLP
khart@rbelaw.com

Daniel James Lueders
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lueders@uspatent.com

Kevin J. Malaney
FOLEY & LARDNER LLP
kmalaney@foley.com

Michael M. Morris
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
mmorris@uspatent.com

Matthew W. Peters
FOLEY & LARDNER LLP
mpeters@foley.com

Sarah E. Rieger
FOLEY & LARDNER LLP
srieger@foley.com