UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRADLEY CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-01240-SEB-KMB |
| ) | |
| LAWLER MANUFACTURING CO., INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Now before the Court is Counter-Plaintiff Lawler Manufacturing Co.'s ("Lawler") request for a contract interpretation as a matter of law of the phrase "within the Lawler Patent Rights," as used in Section 3.2 of the License Agreement. This request was originally raised by Lawler in a motion *in limine*, but because that was an inappropriate procedural method (as explained by the Court in our prior ruling) and after providing notice to Lawler and Counter-Defendant Bradley Corporation ("Bradley"), the Court converted Lawler's request to a motion for (partial) summary judgment, pursuant to Federal Rule of Civil Procedure 56(f). Having reviewed the parties' original briefings on this issue, and considering their arguments at the final pretrial conference as well as their supplemental briefing, we now issue our interpretation of the disputed contract language as explicated below.

**Factual Background**[1]

---

[1] We address in this order only those facts pertaining to the contract interpretation issue now before us.

Bradley and Lawler are competitors in the commercial washroom and emergency safety industry, specifically competing in the thermostatic mixing valve ("TMV")[2] and emergency safety shower and eyewash markets.  In March 2001, following several years of litigation, Bradley and Lawler entered into a Settlement Agreement to resolve that case which involved allegations of patent and trade dress/trademark infringement as well as various state law claims.  The Settlement Agreement included several subparts, including a patent and trade secret license agreement ("the License Agreement").

Under the terms of the License Agreement, Bradley received a license from Lawler to make, use, and sell the "Licensed Product," to wit, TMVs covered by "Lawler Patent Rights" or that "utilize[ed] any Lawler Trade Secrets." Dkt. 1-1 §§ 1.4, 2. "Lawler Patent Rights" are defined in the License Agreement as "patent rights arising out of or resulting from U.S. Patent Nos. 5,323,960 and 5,647,531, U.S. Patent Application No. 09/165,880, filed on October 2, 1988, and all continuations, divisions, continuations-in-part, resulting patents, reissues, reexaminations, foreign counterparts, patents of addition, and extensions thereof." Dkt. 1-1 § 1.2.  In addition to the patent rights arising out of or resulting from the '960 and '531 patents, this definition also encompassed patent rights arising out of or resulting from the following additional patents issued from continuation and divisional applications claiming priority to the '880 application: U.S.

---

[2] TMVs are used in safety showers and eyewashes to "maintain the tempering of the water regardless of extreme fluctuations in the supply of hot or cold water to the thermostatic mixing valve." Exh. N, Col. 1, lines 64–67.

Patent Nos. 6,315,210; 6,543,478; 6,851,440; 7,191,954; 8,579,206; 9,218,006; D494,252; and D762,818.

The expiration date of the License Agreement was set to occur following the expiration "of the last to expire of the Lawler Patent Rights." Dkt. 1-1 §§ 6.1–6.2. The last utility patent coming within the Lawler Patent Rights was U.S. Patent No. 8,579,206 ("the '206 patent"), which expired on February 26, 2019. The only remaining unexpired patent after February 26, 2019 that is encompassed within the Lawler Patent Rights is Lawler's U.S. Design Patent No. D762,818 ("the '818 patent"), which was filed in 2015 and is set to expire on August 2, 2031. The '818 patent covers a TMV body design embodied in various Bradley TMVs that were released to the market as early as 1998.

As consideration for the licenses granted in section 2 of the License Agreement, Bradley agreed to pay Lawler royalties on some (but not all) products sold by Bradley that practice the Lawler Patent Rights. The License Agreement's royalty provisions are contained in section 3 of the License Agreement. Specifically, § 3.1 of the License Agreement applies a 10% royalty on the "Selling Price" of "Licensed Units." *Id.* § 3.1. "Licensed Units" are defined as "each unit of Licensed Product covered by one or more claims of the Lawler Patent Rights made by or for Bradley or an Affiliate as finished product in a [TMV]." *Id.* § 1.5.

Section 3.2 of the License Agreement prohibits Bradley from "attempt[ing] to Design Around the Lawler Patent Rights for the terms of The Lawler Patent Rights." *Id.* § 3.2. This provision defines a "Design Around" as "any design, or attempt to design, to modify, restructure or improve on a Thermostatic Mixing Valve" other than alterations

3

that constitute "[s]tandard ordinary engineering changes done within the ordinary course of business … provided the resulting valve is a Thermostatic Mixing Valve within the Lawler Patent Rights." *Id.*  The design around provision further states that "Design Around" does not include "any design which incorporates technology that, as of the date of this License Agreement, is not contemplated as a design for a mixing valve." *Id.* Bradley is also permitted under § 3.2 to "make or sell thermostatic mixing valves that (1) utilize unrelated new technologies, and (2) Vernatherm® valves that are not Licensed Units." *Id.*

In 2018, before the expiration date of the '206 utility patent, Bradley introduced a new valve body style on certain of its TMVs, including those at issue in this litigation. Bradley has not made or sold any TMVs having the pre-2018 valve body style after February 26, 2019, and the '818 patent does not cover Bradley's current TMVs.  The parties do not dispute that, "[a]fter the design change, … [Bradley's current] valves are no longer covered by the '818 Patent…." Rieger Decl., Exh. 1 at 19.  Bradley's redesigned TMVs continued to be covered by the '206 patent until it expired on February 26, 2019. Since that date, however, Bradley has not sold any TMV products that are covered by any unexpired claim of the "Lawler Patent Rights."

Bradley filed the instant declaratory judgment action to clarify the parties' rights under the License Agreement.  Lawler, in turn, countersued alleging, *inter alia*, that Bradley breached § 3.2 of the License Agreement when it redesigned certain models of its TMVs in 2018.  The issue currently before the Court is the proper legal construction

4

of the phrase "within the Lawler Patent Rights" as that language is used in the License Agreement's redesign provision.

## Legal Analysis

### I. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

### II. Applicable Legal Principles

Under Indiana law,[3] "[t]he goal of contract interpretation is to determine the intent of the parties when they made the agreement." *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014) (quotation marks and citation omitted). In doing so, we "review the contract as a whole" and "mak[e] every attempt to construe the contract's language 'so as not to render any words, phrases, or terms ineffective or meaningless.'" *Barker v. Price*, 48 N.E.3d 367, 370 (Ind. Ct. App. 2015) (quoting *Four*

---

[3] The parties agree that Indiana law applies to this contract interpretation dispute.

*Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007)). When contract language is clear and unambiguous, a court "must give those terms their clear and ordinary meaning," *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005), and "no extrinsic evidence is admissible to explain the terms of such an agreement." *Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.*, 616 F.3d 618, 622 (7th Cir. 2010) (citing *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006)). However, "[w]hen the contract is ambiguous, … extrinsic evidence is permissible to explain the intentions of the parties." *Id.* (citing *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008)).

The fact of conflicting interpretations of a provision does not necessarily signal a legal ambiguity. *Powell v. Am. Health Fitness Center of Fort Wayne, Inc.*, 694 N.E.2d 757, 760 (Ind. App. Ct. 1998) ("A contract is not ambiguous merely because the parties offer different interpretations of the contract terms."). Rather, "'[a] contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation.'" *Tender Loving Care*, 14 N.E.3d at 72 (quoting *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012)). "Even if a contract is ambiguous, its interpretation is still a question of law if the ambiguity exists because of the language used in the agreement and not because of extrinsic facts." *Allen v. Cedar Real Estate Group, LLC*, 236 F.3d 374, 381 (7th Cir. 2001) (applying Indiana law). Only if an ambiguity must be interpreted in light of extrinsic evidence is there an issue that must be resolved by a jury. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 842 (Ind. Ct. App. 2017). With these legal principles in mind, we turn to address the merits of the parties' current dispute.

6

**III.   Discussion**

Bradley and Lawler dispute the correct meaning of the phrase "within the Lawler Patent Rights" as it is used in § 3.2 of the License Agreement, also referenced herein as the design around provision.  Lawler claims that, properly interpreted, "within the Lawler Patent Rights" requires that any redesigned product must remain "within the same Lawler Patent Rights after the change as it was before." Dkt. 246 at 10.  In other words, under Lawler's definition, "a change cannot *remove* the product from being within the royalty obligation" any sooner than it would have been removed prior to the change.  *Id.* (emphasis in original).  There is no dispute that, prior to Bradley's 2018 design changes, the relevant models of its TMVs were covered by the '818 design patent, and that, after those changes, the resulting valves are no longer covered by the '818 patent.  Accordingly, if Lawler's definition is correct, Bradley's design changes would constitute a breach of § 3.2 of the License Agreement because the resulting valves would not be "within the Lawler Patent Rights."

Bradley, on the other hand, argues that to be "within the Lawler Patent Rights" after any redesign, the resulting valve must only be "covered by one or more claims of the Lawler Patent Rights, within an existing and unexpired patent in the Lawler Patent Rights." Dkt. 334 at 1.  Bradley's view, based on its designated experts' testimony, is that, following its 2018 redesign, the relevant models of its TMVs remained covered by at least one claim of the '206 patent, which was in the Lawler Patent Rights, and, at the time of the redesign, was still unexpired.  Thus, if Bradley's definition is correct, its redesigned TMVs were "within the Lawler Patent Rights."

7

Under well-established principles of contract interpretation, to determine the intent of the parties at the time of the contract, we examine first the plain language of their agreement. Here, § 3.2 of the License Agreement prohibits Bradley from "Design[ing] Around The Lawler Patent Rights for the terms of The Lawler Patent Rights." Dkt. 1-1 § 3.2. We repeat: "Design Around" as the term is used in § 3.2 includes "any design, or attempt to design, to modify, restructure or improve on a Thermostatic Mixing Valve" but does not include "[s]tandard ordinary engineering changes done within the ordinary course of business" so long as "the resulting valve is a Thermostatic Mixing Valve *within the Lawler Patent Rights*." *Id.* (emphasis added).

The term "Thermostatic Mixing Valve" is defined elsewhere in the License Agreement to be "any valve covered by one or more claims of the Lawler Patent Rights." Dkt. 1-1 § 1.6. Inserting this language into § 3.2, the relevant sentence reads as follows with the disputed phrase italicized: "Standard ordinary engineering changes done within the ordinary course of business shall not be deemed 'Design Around' provided the resulting valve is any valve covered by one or more claims of the Lawler Patent Rights *within the Lawler Patent Rights*." Dkt. 1-1 § 3.2.

Our review in light of the parties' uncontroverted evidence and arguments in support of their respective interpretations of "within the Lawler Patent Rights," leads us to conclude that this phrase, properly construed, means "within an existing and unexpired patent in the Lawler Patent Rights," consistent with Bradley's construction. Under Indiana law, "[t]he general rule dealing with undefined words in contracts is to use the plain meaning of such words." *Pub. Serv. Co. v. Miller Constr. Co.*, 535 N.E.2d 573, 574

8

(Ind. Ct. App. 1989). Bradley's construction (with which we agree) hews strictly to the plain and ordinary meaning of the contract language and is supported by other portions of the License Agreement where the phrase is used in accordance with its plain meaning.

In addition to its appearance in § 3.2, the disputed phrase "within the Lawler Patent Rights" appears in two other sections of the License Agreement:

> Section 2.4: Bradley and its Affiliates agree to mark the patent numbers of the applicable patents *within the Lawler Patent Rights* on all Licensed Units invoiced and shipped by them so as to comply with the marking requirements United States Patent Law, 35 U.S.C. § 287.
>
> Section 6.2: This License Agreement will earlier terminate, partially or completely, only to the extent that claims of the patents *within the Lawler Patent Rights* expire, or are held invalid or unenforceable by a court of competent jurisdiction by final judgment from which no appeal has been taken.

Dkt. 1-1 §§ 2.4, 6.2. Because only unexpired patents would need to be marked and can in due course actually expire, these sections of the License Agreement use the phrase in the manner consistent with Bradley's interpretation, to wit, to mean being within an existing and unexpired Lawler Patent Right.

Conversely, Lawler's proposed construction, to wit, "within the same Lawler Patent Rights after the change as it was before," injects language into the License Agreement which is not there, and further, is inconsistent with both the plain meaning of the phrase as well as with the way the phrase is used elsewhere in the License Agreement. If the parties intended Lawler's interpretation of § 3.2 to apply, they could have used language specifically indicating that the resulting TMV was required to be covered by the same patents before and after any change or to remain royalty-bearing for

9

the same length of time before and after any change.  The fact that they did not say so explicitly buttresses the Court's conclusion that "within the Lawler Patent Rights" must be interpreted in accordance with the plain meaning of the phrase.

Lawler rejoins that Bradley's interpretation leads to a nonsensical reading of § 3.2 and thus violates the rule of construction providing that contract language should not be interpreted literally if doing so would produce absurd results.[4]  *See USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 539 (Ind. 1997)  ("[I]f the plain and ordinary meaning would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument, then the grammatical and ordinary sense of the words may be modified, so as to avoid that absurdity and inconsistency, *but no further*.") (emphasis in original) (citation and quotation marks omitted).  Specifically, Lawler argues that Bradley's interpretation creates a loophole that leads to the absurd result that an actual design around of one patent "shall not be deemed 'Design Around,'" under § 3.2 so long as the resulting valve is still covered by at least one claim of an unexpired patent within the Lawler Patent Rights.

It is true that, under Bradley's interpretation of "within the Lawler Patent Rights," a change that results in a TMV being covered by fewer of the Lawler Patent Rights than it was before the change "shall not be deemed 'Design Around,' so long as the resulting

---

[4] Lawler also argues that its definition, unlike Bradley's, is consistent with § 3.2's requirement that Bradley not design around "for the *terms* [plural] of The Lawler Patent Rights." Dkt. 1-1 § 3.2 (emphasis added).  We are not persuaded by this argument because "terms" in that context merely establishes that the design around provision applies while the Lawler Patent Rights are in existence.  It has no bearing on the definition of "design around," or, more specifically, "within the Lawler Patent Rights."

valve remains covered by at least one unexpired claim of the Lawler Patent Rights. This in turn could, as it did here, result in the redesigned TMV being subject to the License Agreement's royalty provision for a shorter period of time than it was prior to the change. We do not, however, agree with Lawler that such a result is so "absurd" as to justify rebutting the "strong" plain-meaning presumption here. *Quality Oil, Inc. v. Kelley Partners, Inc.*, 657 F.3d 609, 612 (7th Cir. 2011) (applying Indiana law).

For these reasons, we hold that "within the Lawler Patent Rights" in § 3.2 of the License Agreement means "within an existing and unexpired patent in the Lawler Patent Rights" and therefore <u>DENY</u> Lawler's motion for summary judgment. Trial shall proceed accordingly, as scheduled.

IT IS SO ORDERED.

Date: _____1/19/2023_____     _____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jack Thomas Carroll
Foley & Lardner LLP
jcarroll@foley.com

Scott J. Collins
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
scollins@uspatent.com

Jeffrey N. Costakos
FOLEY & LARDNER LLP
jcostakos@foley.com

Stephen E. Ferrucci
CLAPP FERRUCCI
SFerrucci@SeanMClapp.com

Andrew Gross
Foley & Lardner LLP
agross@foley.com

Kathleen I. Hart
RILEY BENNETT EGLOFF LLP
khart@rbelaw.com

Daniel James Lueders
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lueders@uspatent.com

Kevin J. Malaney
FOLEY & LARDNER LLP
kmalaney@foley.com

Shane T. Moreillon
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
smoreillon@uspatent.com

Michael M. Morris
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
mmorris@uspatent.com

Matthew W. Peters
FOLEY & LARDNER LLP
mpeters@foley.com

Sarah E. Rieger
FOLEY & LARDNER LLP
srieger@foley.com